Michael TRAVERS, M.D.,
Plaintiff–Appellant,

v.

Donna E. SHALALA, Ph.D.,* Secretary of the United States Department of Health and Human Services, Defendant–Appellee.

No. 92–36658.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1994.

Decided March 31, 1994.

---

* Donna E. Shalala, Ph.D., has been substituted for Louis W. Sullivan, M.D., Fed.R.App.P. 43(c).

Kenneth Joel Haber, Rockville, MD., for plaintiff-appellant.

Lucille Gonzales Meis, Asst. Regional Counsel, Dept. of Health and Human Services, Denver, CO, Frank A. Wilson, Asst. U.S. Atty., Spokane, WA, for defendant-appellee.

Before: CANBY, and T.G. NELSON, · Circuit Judges, and SHUBB,** District Judge.

SHUBB, District Judge:

Michael Travers, M.D., appeals a summary judgment in which the district court affirmed the Secretary of Health and Human Services' decision to exclude Travers from participating in the Medicare and State health care programs for a statutory period of five years pursuant to 42 U.S.C. § 1320a–7. On appeal, Travers argues that (1) he was not convicted of a program-related offense within the meaning of 42 U.S.C. § 1320a–7(i); (2) he was entitled to an evidentiary hearing to attack the underlying circumstances in the state court proceedings; (3) the Secretary was required to promulgate regulations articulating the distinction between "deferred adjudication" and "deferred prosecution;" and (4) the district court abused its discretion in granting the Secretary's motion for a protective order barring discovery. All four arguments advanced by Travers lack merit. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Travers, a physician, was accused of filing a false Medicaid claim which resulted in overpayment for services rendered in violation of Utah Code Ann. § 26–20–7(2)(b). He agreed to plead "no contest" to the charge and to pay restitution, investigation costs, and a civil penalty. The plea agreement provided that, in the event Travers failed to make the predetermined payment within 60 days, the Utah court would accept his no contest plea and proceed to set the matter for imposition of sentence. On the other hand, if Travers fully complied with the terms of the plea agreement, the court would allow him to withdraw his no-contest plea and dismiss the charges with prejudice. The Utah state court approved the plea agreement "as a first offender disposition" and took Travers' plea of "no contest" under advisement. On January 9, 1989, after Travers made the required payments, the Utah court entered an order permitting him to withdraw his plea and dismissed, with prejudice, the criminal charges.

In a letter dated June 20, 1989, defendant-appellee, the Secretary of Health and Human Services, through the Inspector General, determined that Travers had been convicted of a criminal offense related to the delivery of an item or service under the Medicaid program which, under 42 U.S.C. § 1320a–7(a)(1), required a mandatory minimum exclusion for a period of five years.

Travers filed a timely appeal of his exclusion to the Administrative Law Judge, arguing that he should have been allowed to show at an evidentiary hearing that he never intentionally committed the criminal offense of filing Medicaid claims in violation of Utah law, and to explain his understanding of the legal significance of his plea agreement. On a motion for summary judgment, the Administrative Law Judge affirmed his five-year exclusion. It was later affirmed by the Department of Health and Human Services, Departmental Appeals Board, Appellate Division.

Travers subsequently filed a complaint in the United States District Court, Eastern District of Washington, challenging the Secretary's decision and seeking injunctive and declaratory relief. Pending the resolution of the case on summary judgment, the district court granted the Secretary's motion for a protective order, preventing Travers from conducting discovery on the ground that the issues raised in the Secretary's motion involved pure legal questions. On April 29, 1992, and June 24, 1992, in two separate orders, the district court granted summary judgment in favor of the Secretary, holding that there was substantial evidence to support the Secretary's findings. Additionally, the district court found no due process violations in the administrative proceedings. Travers filed a timely appeal to this court.

## STANDARD OF REVIEW

We review *de novo* the district court's grant of summary judgment in favor of the

---

** Honorable William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation.

Secretary. *United States v. Hatcher,* 922 F.2d 1402, 1405 (9th Cir.1991). The Secretary's findings must be affirmed if they are supported by substantial evidence. *See Higbee v. Sullivan,* 975 F.2d 558, 562 (9th Cir. 1992) (citing *Martinez v. Heckler,* 807 F.2d 771, 772 (9th Cir.1986)). Substantial evidence means " 'more than a scintilla' and is such that a reasonable mind may accept it as adequate to support a conclusion." *Hudson v. Bowen,* 849 F.2d 433, 434 (9th Cir.1988) (citing *Miller v. Heckler,* 770 F.2d 845, 848 (9th Cir.1985)).

## DISCUSSION

I. *SUBSTANTIAL EVIDENCE EXISTS IN THE RECORD TO SUPPORT THE AGENCY'S DETERMINATION THAT TRAVERS HAD BEEN CONVICTED WITHIN THE MEANING OF 42 U.S.C. § 1320a–7(i)*

■ Section 1128(a)(1) of the Social Security Act, as amended, 42 U.S.C. § 1320a–7(a)(1), mandates the Inspector General of the Department of Health and Human Services to exclude providers who have been "convicted," under state or federal law, of a "criminal offense related to the delivery of an item or service" under Medicare, Medicaid or any state health care program for a minimum period of five years. Congress, when enacting the Medicare and Medicaid Patient and Program Protection Act in 1987, broadened the definition of "conviction," to encompass not only the entry of judgment, but also the participation in "a first offender deferred adjudication, or other program where judgment of conviction has been withheld." H.R.Rep. No. 99–727, 99th Cong., 2d Sess. 75, *reprinted in* 1986 U.S.C.C.A.N. 3607, 3665. Specifically, the statute sets forth four alternative definitions for the term "conviction" in 42 U.S.C. § 1320a–7(i):

(1) when a judgment of conviction has been entered against [an] individual or entity by a Federal, State, or local court, regardless of whether there is an appeal pending or whether the judgment of conviction or other record relating to criminal conduct has been expunged;

(2) when there has been a finding of guilt against [an] individual or entity by a Federal, State, or local court;

(3) when a plea of guilty or nolo contendere by [an] individual or entity has been accepted by a Federal, State, or local court; or

(4) when [an] individual or entity has entered into participation in a first offender, deferred adjudication, or other arrangement or program where judgment of conviction has been withheld.

42 U.S.C. § 1320a–7(i).

The Secretary found that Travers participated in a "first offender, deferred adjudication, or other arrangement or program where judgment of conviction has been withheld," within the meaning of § 1320a–7(i)(4). There is substantial evidence in the record to support that finding. Travers entered a plea of "no contest," which was taken under advisement. His plea agreement provided that if he complied with its terms the court would allow him to withdraw his plea and dismiss the charge against him with prejudice, but if he failed to comply with the terms of the agreement, the court would accept his no contest plea and proceed to sentence.

■ Travers argues that he was diverted to a non-criminal process under § 77–2–5 of the Utah Code of Criminal Procedure, which states that "[d]iversion is not a conviction and if the case is dismissed the matter shall be treated as if the charge had never been filed." Utah Code Ann. § 77–2–7 (1992). What constitutes a "conviction" under the Medicaid Act, however, is determined by federal law, not state law. *See United States v. Brebner,* 951 F.2d 1017, 1021 (9th Cir.1991) (citing *Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 110, 103 S.Ct. 986, 990, 74 L.Ed.2d 845 (1983) (the definition of "conviction" under the federal Gun Control Act is an issue of federal law except when Congress indicated otherwise)). To determine whether state court proceedings constituted a conviction under § 1320a–7(i), we look to the substance of the proceedings, rather than any formal labels or characterizations used by the state or by the parties.

The Secretary draws a distinction between a "deferred adjudication" and a "deferred prosecution." Whereas a deferred adjudication is a conviction under § 1320a–7(i)(4), a deferred prosecution is not. As the district court observed:

> In a deferred prosecution, an agreement is entered into between the prosecutor and the defendant. At the heart of deferred prosecution is an agreement by the prosecutor to delay bringing or prosecuting charges. In a deferred adjudication, there is no such deferral by the prosecutor.

*Travers v. Sullivan,* 801 F.Supp. 394, 401 (E.D.Wash.1992). This is a rational distinction which is consistent with the language and purposes of the statute.[1] In a deferred prosecution, it is not simply the judgment, but the initiation of charges altogether, which is withheld. If the defendant does not live up to the terms of his agreement with the prosecutor, he may be free to enter or persist in a plea of not guilty and proceed to trial. In a deferred adjudication, on the other hand, if the defendant does not live up to the terms of his agreement, he is not free to set aside his plea or proceed to trial—the court may simply enter a judgment of conviction. Under those circumstances, the entry of a judgment is a mere formality because the defendant has irrevocably committed himself to a plea of guilty or no contest which cannot be unilaterally withdrawn.

Had Travers participated in a deferred prosecution, the proceedings would not have constituted a "conviction" within the meaning of section 1320a–7(i)(4). The state court proceedings, however, clearly constituted a "deferred adjudication" or "first offender" program, of the type covered by subsection (i)(4), rather than a "deferred prosecution." Travers was not at liberty to withdraw his plea and proceed to trial upon his failure to comply with the plea agreement. On the contrary, had he failed to comply, the court would have accepted his no contest plea and proceeded to set the matter for imposition of sentence.

To support his characterization of the state court proceedings as a deferred prosecution, Travers submitted the affidavit submitted by his attorney, reciting that:

> If the judge in Dr. Travers' state matter decided that the final deposition [sic] should not have been in accordance with the diversion agreement, then the judge, pursuant to Rule 11(8)(c), would have permitted Dr. Travers to withdraw his initial no contest plea, which the judge by agreement had not yet accepted, and to defend himself from the state's charges.

This appears to be no more than a recital of the Utah procedure relative to tentative plea agreements.[2] Travers' agreement, however, was not tentative; the judge had approved the agreement, and Travers had tendered his plea. At best, the affidavit establishes that Travers' attorney read the plea agreement differently than we do. The opinions of his attorney cannot refute the clear and unam-

---

**1.** In its discussions regarding the definition of convictions covering "first offender, deferred adjudications, or other arrangements," the congressional committee noted:

> State first offender or deferred adjudication programs typically consist of a procedure whereby an individual pleads guilty or nolo contendere to criminal charges, but the court withholds actual entry of a judgment of conviction against them and instead imposes certain conditions of probation, such as community service or a given number of months of good behavior. If the individual successfully complies with these terms, the case is dismissed entirely without a judgment of conviction ever being entered.

H.R.Rep. No. 99–727, 99th Cong., 2d Sess. 75, *reprinted in* 1986 U.S.C.C.A.N. 3607, 3665.

**2.** Rule 11(8) of the Utah Rules of Criminal procedure provides that:

> (a) The judge may not participate in plea discussions prior to any agreement being made by the prosecuting attorney.
>
> (b) When a tentative plea agreement has been reached that contemplates entry of a plea in the expectation that other charges will be dropped or dismissed the judge, upon request of the parties, may permit the disclosure to him of the tentative agreement and the reasons for it, in advance of the time for tender of the plea. The judge may then indicate to the prosecuting attorney and defense counsel whether he will approve the proposed disposition.
>
> (c) If the judge then decides that final disposition should not be in conformity with the plea agreement, he shall advise the defendant and then call upon the defendant to either affirm or withdraw his plea.

biguous terms of the plea agreement. The affidavit did not create a genuine issue of material fact.

Travers further argues that there cannot be a withholding of a judgment of conviction within the meaning of § 1320a–7(i)(4) if the plea was never "accepted" by the court. Such an interpretation of the statute is contrary to well-established rule that a court should refrain from interpreting a statutory provision in a manner that would "render superfluous other provisions in the same enactment." *Freytag v. Commissioner*, 501 U.S. 868, ——, 111 S.Ct. 2631, 2638, 115 L.Ed.2d 764 (1991) (quoting *Pennsylvania Public Welfare Dep't. v. Davenport*, 495 U.S. 552, 562, 110 S.Ct. 2126, 2132, 109 L.Ed.2d 588 (1990)). If, as Travers argues, the withholding of a judgment requires that a judgment be first entered, subsection (i)(3), which specifically encompasses situations where a plea has been accepted, would always supersede (i)(4), thereby rendering the latter superfluous. Subsection (i)(4) must be read to apply in situations where the plea has not been accepted by the court.

Finally, there is substantial evidence in the record to support the Secretary's conclusion that Travers' criminal conviction was of a program-related offense. Travers was charged with "knowingly ... fil[ing] a claim for medical benefit which misrepresents the type, quality, or quantity of terms or service rendered" as a result of erroneous billing codes used by his office for medical reimbursement. The legislative history of the Act makes it absolutely clear that such financial misconduct is exactly what Congress sought to discourage. *See* H.R.Rep. No. 95–393, 95th Cong., 1st Sess. 3, *reprinted in* 1977 U.S.C.C.A.N. 3039, 3048.

## II. *NO EVIDENTIARY HEARING WAS REQUIRED*

Travers sought to show that the Inspector General's official who made the initial decision to exclude him was not a neutral and detached fact finder. *See Gibson v. Berryhill*, 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973); *Ward v. Village of Monroeville*, 409 U.S. 57, 61–62, 93 S.Ct. 80, 83–84, 34 L.Ed.2d 267 (1972). However, the Inspector General was not engaging in a fact-finding or discretionary function when he excluded Travers.

Conviction of a program-related offense as defined by § 1320a–7(i) is the triggering event that mandates the Secretary to impose a minimum five-year exclusion. The language—"[t]he Secretary shall exclude"—is mandatory, not discretionary. 42 U.S.C. § 1320a–7(a). To determine whether Travers was convicted of a program-related offense, the Inspector General looked to the substance of the state proceedings and the nature of Travers' crime as charged by the State of Utah. As noted by the district court, "[i]t is not necessary or proper for the Inspector General to delve into the facts surrounding the conviction." *Travers v. Sullivan*, 801 F.Supp. 394, 403 (E.D.Wash.1992). Once he found that the Utah state court's disposition of the charge amounted to a conviction of a program-related offense, the Inspector General had no choice but to impose the mandatory 5-year exclusion under § 1320a–7(a)(1).

Since there were no disputed issues of material fact, "a plenary, adversary administrative proceeding involving evidence, cross-examination of witnesses, etc., [was] not obligatory ..." *United States v. Consolidated Mines and Smelting Co., Ltd.*, 455 F.2d 432, 453 (9th Cir.1971). Hence, the district court correctly concluded that an evidentiary hearing allowing Travers to relitigate the facts underlying the state court proceedings was not necessary.

## III. *REGULATIONS ARTICULATING THE DISTINCTION BETWEEN "DEFERRED ADJUDICATION" AND "DEFERRED PROSECUTION" WERE NOT REQUIRED*

It is well settled that detailed rules or regulations are not required for every statutory provision, nor is it required that every word of every statute be defined. *See S.E.C. v. Chenery Corp.*, 332 U.S. 194, 202, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947); *see also American Power & Light Co. v. SEC*, 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103 (1946).

As the district court pointed out, "even in the absence of explanatory regulations, the distinction between deferred prosecution and deferred adjudication is sufficiently clear" from the face of the statute itself making further clarifications between the two types of disposition unnecessary. *Travers,* 801 F.Supp. at 401. Furthermore, the legislative history adequately describes the characteristics of "a first-offender, deferred adjudication, or other arrangement or program where judgment of conviction has been withheld." 42 U.S.C. § 1320a–7(i)(4). *See* 1986 U.S.C.C.A.N. at 3665; S.Rep. No. 100–109, 100th Cong., 1st Sess. 2, *reprinted in* 1987 U.S.C.C.A.N. 682, 694–695. Therefore, the Inspector General was not required to promulgate regulations describing the characteristics of "deferred adjudication" and "deferred prosecution."

IV. *THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN GRANTING THE SECRETARY'S MOTION FOR A PROTECTIVE ORDER*

We review for abuse of discretion the district court's entry of a protective order barring discovery. *Home Sav. Bank, F.S.B. by Resolution Trust Corp. v. Gillman,* 952 F.2d 1152, 1157 (9th Cir.1991) (citing *Kirshner v. Uniden Corp. of America,* 842 F.2d 1074, 1079 (9th Cir.1988)). Since the mandatory exclusion provision left the Inspector General with no discretion, as discussed above, information regarding his performance appraisals or the Department's merit pay system was irrelevant. Fed.R.Civ.P. 26(b)(1) permits parties to conduct discovery "regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action...." Accordingly, the district court did not abuse its discretion in granting the protective order.

The judgment of the district court is therefore

AFFIRMED.