46 F.3d 1143
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Vernon NEASHAM, Plaintiff-Appellant,
v.
Donna E. SHALALA, etc., Defendant-Appellee.
 No. 93-16243.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted: Dec. 16, 1994.
Decided: Jan. 27, 1995.
 
 Before: TANG, REINHARDT, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Vernon Neasham appeals the district court's summary judgment in favor of the Secretary of Health and Human Services. The district court found that substantial evidence supported the administrative law judge's ("ALJ's") finding that Neasham was not disabled within the meaning of Title II of the Social Security Act and therefore not entitled to social security disability benefits.
 
 
 3
 Neasham filed for disability benefits because of a lower back injury suffered in April 1989. He claimed that he was disabled as the result of disc bulging and spinal stenosis in his lower back. The ALJ found that, despite Neasham's impairment, Neasham was not disabled because he could continue his relevant past work as an insurance agent or as a college professor. We have jurisdiction under 28 U.S.C. Sec. 1291. We reverse and remand for reconsideration and further proceedings.
 
 I.
 
 4
 The decision of the district court granting summary judgment is reviewed de novo. Travers v. Shalala, 20 F.3d 993, 995-96 (9th Cir. 1994). The decision of the Secretary must be affirmed if it is supported by substantial evidence and the Secretary applied the correct legal standards. Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993). In determining whether the ALJ's decision is supported by substantial evidence, we are required to review the whole record, not merely those portions that support his decision. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). We may not affirm merely by "isolating a specific quantum of supporting evidence" that supports the ALJ's conclusion. Id.
 
 II.
 
 5
 The ALJ found that Neasham has not engaged in substantial gainful activity since April 21, 1989, and that he has a back impairment that significantly limits his ability to perform basic work activities. However, the ALJ also found that Neasham retained the residual functional capacity to do "light" work[1] and that he could return to his past relevant work as either an insurance broker or college instructor. The ALJ gave little weight to Neasham's testimony that his back and right leg pain, numbness, and instability precluded the performance of "light" work. In addition, the ALJ discredited Neasham's treating physician's opinion, believing the physician's progress reports to be in conflict with the physician's later assessments.
 
 
 6
 Neasham's main contention is that the ALJ improperly rejected the opinion of his treating physician, Richard Kurz, M.D., concerning Neasham's functional limitations. We agree. The ALJ is required to credit the treating physician's opinion unless he provides "specific and legitimate reasons," supported by substantial evidence in the record, for rejecting this opinion. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). The ALJ's reasons for rejecting the treating physician's opinion must be "clear and convincing." Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989).
 
 
 7
 Specifically, the ALJ rejected Dr. Kurz's opinion as it appeared in a March 16, 1991 disability evaluation report (AR 205) and a letter to Ron Green, Neasham's attorney (AR 206). The disability evaluation report states that, although Neasham's prognosis was good, he should not be sitting for long periods of time. (AR 205). In his letter to Green, Dr. Kurz stated that Neasham could "definitely not ... sit for 6 of 8 hours at a desk job." He further noted, "I doubt that he could even sit for 1 hour at a stretch." (AR 206).[2] The ALJ discredited the assessments contained in these documents because he believed they conflicted with Dr. Kurz's progress notes (AR 168-184), which seemed to show continued improvement in Neasham's condition. These notes, however, do not contradict Dr. Kurz's specific findings regarding Neasham's inability to sit continuously.
 
 
 8
 The ALJ's reliance on specific notations contained in Dr. Kurz's progress notes from 1989 and 1990 is insufficient for rejecting the specific limitations on Neasham's ability to sit contained in Dr. Kurz's March 16, 1991 report. Such reliance ignores the overall deterioration of Neasham's condition. Although it appears that Neasham did experience brief periods of relief from his symptoms, his complaints of back pain radiating to his legs continued from April 1989 (the date of his injury) through at least August 1991 (the date of the hearing).[3] Dr. Kurz originally hoped that Neasham would be able to return to work. But after receiving the results of MRI testing conducted in October 1990, Dr. Kurz concluded that Neasham was severely limited in his ability to do light work or even to sit continuously.
 
 
 9
 At oral argument, the government focused on four notations from Dr. Kurz's progress notes that, it argued, undermined the specific findings contained in the March 16, 1991 reports. On November 9, 1989 (seven months after his injury), Dr. Kurz's notes state that he believed that Neasham "should try not to go on disability just yet." (AR 174). At the hearing, Neasham testified that Dr. Kurz initially refused to sign for permanent disability because he did not want the claimant to give up. (AR 73). When Neasham's condition failed to improve, Dr. Kurz did submit reports in support of his disability claim.
 
 
 10
 The government also called attention to progress notes from November 30, 1989, stating that Neasham was walking one mile. (AR 173). Neasham's ability to walk is consistent with his testimony (AR 71), and tells us nothing about his ability to sit for extended periods of time.
 
 
 11
 The third comment to which the Secretary draws attention is Dr. Kurz's notation from April 27, 1990 stating "back is 'fine,"' apparently quoting Neasham. (AR 170). It is ambiguous whether this brief notation means that Neasham was experiencing no discomfort at all or, in the alternative, that his pain was "fine" in relation to his prior condition. Even if we assume that Neasham did experience a period of relief from his symptoms, the progress notes demonstrate that it was a brief period. Dr. Kurz's notes from June 27, 1990 show that Neasham's back pain had returned. On that date, Dr. Kurz wrote: "back pain 'catch' in my back," again apparently quoting Neasham. (AR 169).
 
 
 12
 Subsequent records show that Neasham's symptoms persisted. Progress notes from September 1990 indicate that Neasham had "no feeling" in his right leg. (AR 168). In response to Neasham's continued complaints of pain and numbness, MRI testing was conducted on September 25, 1990 and again on October 15, 1990. (AR 186-87). These tests showed that Neasham's underlying condition had not improved and, if anything, had gotten worse since April 1989. The MRI report showed "moderately severe disc bulging" at L4-5 with "considerable impingement on the spinal canal at this level with production of marked spinal stenosis." (AR 186).
 
 
 13
 Finally, the government pointed out that, in August 1990, Dr. Kurz refused Neasham's request to authorize a permanent disability parking placard, to replace a temporary placard that Neasham already had in his possession. (AR 168). At his hearing, Neasham testified that Dr. Kurz initially refused to sign because he did not want Neasham to "give up." (AR 73-74). In May 1991 (after receiving the results of the MRI testing which showed a continued back impairment), Dr. Kurz did sign the authorization for a permanent disability placard. (AR 74).
 
 
 14
 A review of the record persuades us that, taken as a whole, the treatment notes show that Dr. Kurz originally hoped that Neasham would eventually overcome his impairment. However, by March 1991, Dr. Kurz had concluded that Neasham was severely limited in his ability to sit for extended periods and could not perform light work. This conclusion was based in part on the new MRI evidence, which demonstrated the existence of a continuing impairment. (AR 206). The record contains no evidence contradicting Dr. Kurz's specific findings, contained in his March 16, 1991 report, regarding Neasham's inability to sit continuously. Thus, the ALJ has failed to provide clear and convincing reasons, supported by substantial evidence of record, for rejecting Dr. Kurz's opinion on this subject.
 
 
 15
 Because a reliance on Dr. Kurz's reports would lead to a finding of disability, we vacate the summary judgment of the district court and remand for a redetermination of Neasham's disability application in light of the record before us and a determination of an award of benefits.
 
 
 16
 REVERSED and REMANDED for further proceedings consistent with this memorandum.
 
 REINHARDT, Circuit Judge, concurring:
 
 17
 I agree with the memorandum disposition's conclusion. I also agree that we should not simply remand for further proceedings, as suggested in Judge Rymer's concurrence and dissent. However, in an effort to avoid any possible confusion, I wish to make my understanding of the effect of our disposition clear: The Secretary is now required to find that Neasham is disabled and must determine the amount of benefits to which he is entitled.
 
 
 18
 RYMER, Circuit Judge, concurring in part and dissenting in part:
 
 
 19
 Rather than remand "for a determination of an award of benefits," I would simply remand for further proceedings consistent with our disposition.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Light work, under the Social Security regulations, involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Light work may also require a good deal of walking or standing, or it may involve sitting most of the time with some pushing and pulling of arm or leg controls. 40 C.F.R. Sec. 404.1567(b)
 
 
 [2]
 A report from Winston S. Ekren, M.D., a radiologist who examined Neasham on December 12, 1990, corroborates Dr. Kurz's opinion that Neasham could not sit for more than six hours out of an eight-hour workday. (AR 227). The vocational expert testified that these restrictions on Neasham's ability to sit would prevent him from performing his past work as an insurance salesman. (AR 99). All of this is consistent with Neasham's testimony that he could sit in one place only for approximately 20-25 minutes at a time. (AR 47)
 
 
 [3]
 At this point, we also note that the medical reports and evidence of modalities used by Neasham to alleviate pain (e.g. physical therapy, prescription medication, back swing) supported Neasham's pain complaints. Therefore, the ALJ erred in refusing to credit Neasham's subjective complaints of disabling pain. See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991)